UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

---

JONATHAN MCGILL,

                              Plaintiff,

v.                                                            CASE NO.  3:26cv147

THE COUNTY OF HANOVER, VIRGINIA,

                              Defendant.

---

**COMPLAINT**

---

COME NOW Plaintiff Jonathan McGill ("Plaintiff" or "McGill"), by and through his undersigned attorneys, files this Complaint against Defendant Hanover County, Virginia (the "County").

**PRELIMINARY STATEMENT**

1.      Plaintiff is a former Sheriff's Deputy ("Deputy") employed by Defendant Hanover County, Virginia (the "County"). Plaintiff seeks unpaid wage and overtime compensation under the federal and state laws which establish wage and overtime compensation due to law enforcement officers for time he was "on duty" prior to the beginning of his shift, for which he was not paid.

2.      Count One is under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as amended ("FLSA") in which Plaintiff seeks to recover unpaid overtime compensation and liquidated damages from Defendant.

3.      Count Two is brought under this Court's supplemental jurisdiction, also seeking unpaid overtime compensation from Defendant but pursuant to the enhanced relief provided by the Virginia Gap Pay Act, Va. Code § 9.1-700, *et seq.* ("VGPA") for Virginia law enforcement

1

personnel.  Plaintiff brings Count Two seeking declaratory relief, injunctive relief, and to recover unpaid overtime compensation and liquidated damages pursuant to Va. Code § 9.1-700, *et seq.*

4.    Count Three is brought under this Court's supplemental jurisdiction, also seeking damages, including backpay and liquidated damages. Plaintiff brings Count Three under the Va. Code § 40.1-29.2, the Virginia Overtime Wage Act, ("VOWA"), for the period of July 1, 2021-June 30, 2022, during which time frame sovereign immunity was expressly waived, for which Defendant is liable for unpaid overtime, liquidated (double) damages, prejudgment interest and attorneys' fees, and for their acts amounting to a "knowing" violation of VOWA, Plaintiff is entitled to recovery of triple damages.

5.    *Hatcher v. Hines et. al* 3:23-cv00325 was filed as a hybrid class and collective action on May 15, 2023. [ECF 1]. The Court granted class certification and FLSA conditional certification on July 10, 2024. [ECF 67]. Plaintiff opted in to the action on June 15, 2023 [ECF 5-1]. On September 30, 2025, the Court granted Defendant's Motion for Decertification but did not dismiss Opt-in Plaintiffs claims. [ECF 126]. On February 5, 2026, the Court dismissed the Opt-in Plaintiffs claims against the County without prejudice. [ECF146].[1]

## PARTIES

6.    Plaintiff Jonathan McGill is a resident of Virginia and was employed by the Defendant as a "law enforcement employee" within the meaning of Va. Code § 9.1-700 *et seq.* as a Deputy Sheriff from November 2018 to October 2022, specifically he was assigned to patrol, he worked both day and evening shifts during his tenure as a Deputy. Further, Plaintiff was an "employee" under Va. Code. § 40.1-29.2(A) for the period of time from July 1, 2021 until June

---

[1] Plaintiff alleges that his claims relate back or were tolled from the date that he opted into the action, June 15, 2023, until his claims were dismissed without prejudice on February 6, 2026. To the extent that the claims were not tolled, Plaintiff asserts that equitable tolling applies.

30, 2022.

7.      The County of Hanover, Virginia operates the Sheriff's Office, which provides law enforcement services and protection to its citizens, including animal control, court services, civil process, traffic, criminal investigations, and administrative services. The County employs approximately 250 sworn full-time law enforcement officers, known as Deputies.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, and seeks this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

10.     Defendant is subject to personal jurisdiction in the Commonwealth of Virginia.

## FACTUAL ALLEGATIONS

11.     Plaintiff was employed by Defendant in hourly (non-salary) capacity as a Deputy from 2018 until he resigned in October 2022.

12.     Plaintiff's status as employee of the County was evidenced by the fact that the County recognizes Sheriff's deputies as its employees for various purposes, including the provision of employment-related benefits.  Moreover, Deputies are required to adhere to various County policies, including the County's Human Resources Policies manual.

13.     Defendant required Sheriff's Deputies to sign a document confirming their receipt and abiding by the County's Human Resources Policies.

14.     The County provided human resources services to the Sheriff's Deputies, and administered the Deputies' benefits, pay, and payroll.

15.     The County administered a compensation plan specifically for the Deputies and county firefighters (called the Public Safety Pay Plan), and set the Deputies' pay ranges, pay scales, and all pay rules affecting the Deputies.

3

16.     Through the compensation plans, the County sets forth which Deputy positions are paid salary versus hourly, and it sets forth the exempt or non-exempt status (under the FLSA) of the various rankings of the deputies.

17.     Deputies at the rank of Lieutenant and below are paid hourly under the County's compensation plan and are therefore non-exempt from overtime under the FLSA.

18.     The County administered the Deputies time, pay, and benefits records through the County's software system (mainly Kronos, but a successor software system may be in place currently) which the Deputies were required to use to report the shifts they worked, the leave (sick, vacation, etc.) they took, and various benefits elections administered by the County.

19.     Plaintiff was required by Defendant to "mark on duty" upon leaving his home in his Sheriff-issued patrol vehicle prior to the beginning of his shifts during which time he was uncompensated.

20.     To "mark on duty" means that a Deputy either calls in, or logs in from a laptop in the car, to the Sheriff's dispatch system to announce him/herself as being on duty, which means he/she is available to respond to calls, emergencies, or any other event for which such Deputy may be called upon.

21.     Plaintiff was required by Defendant to "mark on duty" from the moment that he turned on his Sheriff-issued patrol car and commenced the drive between his home and the starting location of the Plaintiff's scheduled work shift.

22.     While Plaintiff was required, as part of his employment, to "mark on duty" for a period of time prior to his shift starting, he was not compensated for that time.

23.     Plaintiff was required to mark on duty "10-41" in order for him to appear as visible and available in the Computer-Aided Dispatch ("CAD") system.

24. The County uses CAD to process calls for service, incidents, and identify who to dispatch to calls for service, where those calls are, and track unit activity for the agencies that the Emergency Communications Department is responsible for providing emergency communication services to.

25. Marking on duty was the essential first step of Plaintiff's workday so that Dispatch, the Sheriff's command staff, and all Deputies on duty were notified that he was on duty, "available" and able to respond to calls.

26. After Deputy McGill marked on, but prior to him starting to receive pay, he would be marked on duty and available to respond to calls for 15 minutes.

27. Deputy McGill did not start receiving his pay until his scheduled shift began. On day shift his shift went from 6:00 AM to 4:30 PM and on the evening shift, his shift went from 12:30 PM to 11:00 PM.

28. Deputy McGill worked day shift when he was first hired, he was then switched to evening shift in 2020 and he worked the evening shift until he was switched back to day shift sometime in the spring/summer of 2022.

29. Deputy McGill's work included: preparing reports, patrolling the county, responding to calls, responding to accidents, community policing, and other law enforcement patrol-type duties.

30. For the time period between July 1, 2021 and June 30, 2022, Plaintiff was entitled to the rights, protections, and benefits provided under Va. Code § 40.1-29.2, the Virginia Overtime Wage Act ("VOWA").

31. For the three-year period prior to the filing of his claim, Plaintiff has been entitled to the rights, protections, and benefits provided under §§ 9.1-700 *et seq*, the Virginia Gap Pay Act.

5

32.     Plaintiff was entitled to compensation for submitting to Defendant's policy that he "mark on duty" while driving to either his target location or headquarters prior to the start of every assigned shift during the relevant time period.

33.     Defendant has knowingly refused to pay Plaintiff his wages in connection with the practices complained of herein.

34.     Plaintiff was required to "mark on duty" from his patrol car before the start of his scheduled shift. Plaintiff worked regularly scheduled hours which recur each work week. Consistent with Defendant's 28-day/171-hour election made pursuant to 29 U.S.C. § 207(k), Defendant determined Deputy McGill's overtime based on a twenty-eight (28) day work cycle.

35.     Pursuant to the FLSA and its regulations, an employer of law enforcement officers that elects a 28-day cycle is not required to pay an overtime premium to such law enforcement employees until they work over 171 hours in that cycle. *See* 29 CFR § 553.230

36.      Deputy McGill was scheduled to work between 136.5 and 157.5 hours per twenty-eight (28) day cycle. Specifically, he was scheduled to work from 6:00 AM to 4:30 PM (on day shift) and 12:30 PM to 11:00 AM (on evening shift), 10.5 hours per shift as follows:

- 5 days on, 5 days off
- 5 days on, 4 days off
- 5 days on, 5 days off
- 4 days on, 5 days off

37.     As a Deputy, he worked either 13, 14, or 15 days per twenty-eight (28) day cycle.

38.     Since 2019, Deputy McGill was required to drive a vehicle provided by the Defendant (some vehicles are sheriff-marked vehicles and other vehicles were unmarked vehicles for undercover operatives) and park that vehicle at this home in between shifts.

6

39.     Although Deputy McGill had to "mark on duty" from the time he left his home, he did not start to receive compensation until his shift began.

40.     Marking on duty is the first principal activity of every on-duty Deputy's work shift.

41.     Despite being on duty, Plaintiff was not compensated from the time when he "marked on duty" until his official shift time began for the day.

42.     Plaintiff was required to drive his County-issued vehicle home at the end of his shift each day.

43.     Most days he worked, Deputy McGill was "on duty" for approximately 15 minutes prior to his shift beginning. Plaintiff was not compensated for the time prior to his shift beginning, despite department policy requiring he is to be both on-duty and monitoring the police dispatch.

44.     Due to Defendant's policy and practice of requiring Plaintiff to "mark on duty," and not paying for the time associated with same, Plaintiff was not compensated for the hours he was "on duty" prior to the beginning of each shift he worked during his 28-day work cycle.

45.     Due to Defendant's improper policy of not counting "on duty" time as payable, Plaintiff regularly and consistently worked, and/or was in "paid status" as defined by Va. Code § 9.1-703, for well over his regularly scheduled work hours without receiving overtime compensation for such "on duty" hours.

46.     Defendant received the benefit of Deputy McGill's labor but did not compensate him for his work during these periods of time that he was "marked on duty" prior to the start of their shift.

47.     Plaintiff asserts that Defendant's knowing, reckless, or willful disregard of the overtime laws described herein entitles Plaintiff to the application of a three (3) year limitations period.

## COUNT I

### FAIR LABOR STANDARDS ACT (FLSA)

48.     The FLSA requires covered employers such as Defendant to compensate Deputies at a rate of not less than one-and-one-half times the regular rate of pay for work performed in excess of one hundred and seventy-one (171) hours in a twenty-eight (28) day period.

49.     At all times relevant hereto, Defendant knew, or should have known, that the FLSA applied to Plaintiff.

50.     On information and belief, Defendant had knowledge of their FLSA requirements to pay Plaintiff for time spent working while he was "on duty".

51.     On information and belief, Defendant had knowledge that Plaintiff often was required to "mark on duty" for hours that were above and beyond Plaintiff's normally scheduled hours, resulting in work above and beyond one hundred and seventy-one (171) hours in a twenty-eight (28) day period.

52.     Despite knowledge of its obligations under federal wage laws, including the FLSA, Defendant suffered and permitted Plaintiff to routinely "mark on duty" without paying all overtime compensation due.

53.     Defendant willfully violated the FLSA by its failure to pay Plaintiff overtime compensation for "on duty" time spent prior to the beginning of his shifts, which pushed his total hours worked in excess of one hundred and seventy-one (171) hours in a twenty-eight (28) day period.

54.     Plaintiff is entitled to statutory damages equal to the mandated overtime premium pay within the three (3) years preceding the filing of his claim.

55.     Defendant has shown reckless disregard for the FLSA's overtime requirements for law enforcement personnel.  Although Defendant had an obligation to make proper inquiry into its

FLSA compliance obligations, it failed to do so or, having inquired, it ignored or willfully attempted to avoid its legal obligations.

56. Defendant has not acted in good faith with respect to its failure to pay overtime compensation. Defendant had no legitimate reason to believe its actions and omissions were *not* a violation of the FLSA, thus entitling Plaintiff to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime compensation described above.

## COUNT II

### VIRGINIA GAP PAY ACT (VGPA), VA. CODE § 9.1-700, *et seq.*

57. Defendant has violated Va. Code §§ 9.1-701 through 9.1-703 by depriving Plaintiff of his full overtime pay rates.

58. In 2005, Va. Code §§ 9.1-700, *et seq.* was amended to require that Virginia law enforcement officers working for jurisdictions employing one hundred (100) or more law enforcement employees be paid overtime compensation for the difference between their regularly scheduled work hours and the federal maximum hours allowed by 29 U.S.C. § 201(k).

59. Defendant has knowingly and willfully violated Va. Code §§ 9.1-700, *et seq.* as Defendant knew or showed a reckless disregard for the fact that they have failed to pay Plaintiff in accordance with the mandate of the law for time that he was "on duty" prior to his regular shifts.

60. Pursuant to Va. Code § 9.1-704, Plaintiff is entitled to payment of his "on duty" time at an overtime premium, an additional doubling of that amount for the failure to pay compensation in the pay period due, and payment for his attorney's fees and costs incurred in this proceeding.

61. During the relevant time, Plaintiff was regularly "on duty" and was required to work before or after the start of his shift, without compensation for the same.

62. As a result of the practices described herein, Plaintiff was not paid overtime for

9

regularly worked hours over his scheduled shift-hours, but under the FLSA threshold of 171 hours per twenty-eight (28) day cycle.

63. Plaintiff worked over his scheduled shift hours during the given twenty-eight (28) day cycle on numerous occasions until the end of his employment.

64. As of the date of this filing, Defendant did not pay Plaintiff full overtime compensation for all hours worked and/or in paid status in excess of his regularly scheduled shift hours in each twenty-eight (28) day cycle.

65. Despite knowledge of its obligations under Virginia's police officer wage laws, Defendant permitted Plaintiff to routinely work in excess of their regular schedule without paying all overtime compensation due.

66. Defendant willfully violated Virginia law by its failure to pay Plaintiff overtime compensation in accordance with Virginia Code § 9.1-700 *et seq.*

67. The foregoing conduct constitutes a willful violation within the meaning of Virginia Code § 9.1-705, as Defendant knew or showed reckless disregard for the fact that the County's compensation practices were in violation of Virginia law.

## COUNT III

### VIRGINIA OVERTIME WAGE ACT (VOWA), VA. CODE § 40.1-29.2

68. On July 1, 2021, the General Assembly enacted Va. Code § 40.1-29.2, the Virginia Overtime Wage Act, (VOWA) which expressly defined "person" to include "the Commonwealth, any of its constitutional officers, agencies, institutions, or political subdivisions, or any public body" The definition also explicitly stated that it, "constitutes a waiver of sovereign immunity by the Commonwealth."

69. Pursuant to VOWA, effective July 1, 2021, Plaintiff was entitled to receive an overtime premium for all hours that he worked beyond 171 hours in a twenty-eight (28) day

10

cycle as set forth by 20 U.S.C. § 207(k), and incorporated by Va. Code § 40.1-29.2(C).

70.     The General Assembly amended VOWA effective July 1, 2022 to make it conform with the Fair Labor Standards Act (FLSA) as of that date forward.

71.     From July 1, 2021 through June 30, 2022, VOWA contained an explicit sovereign immunity waiver such that Plaintiff has a private right of action to bring overtime claims against Defendant for occurrences during that time period.

72.     During the weeks between July 1, 2021 and June 30, 2022, McGill worked over 171 hours during twenty-eight (28) cycles on numerous occasions until his retirement in May 2022.

73.     Defendant was aware that Plaintiff consistently "marked on duty" before the start of his shifts, and in fact was directed to do so by Defendant.

74.     Between July 1, 2021 through June 30, 2022, Defendant violated Va. Code § 40.1-29.2 by failing to pay Plaintiff an overtime premium for all hours worked in excess of 171 hours per twenty eight (28) cycle, thereby depriving Plaintiff of wages at an overtime pay rate(s) of his wage plus a one-and-one-half (1.5x) premium.

75.     Defendant knew that Plaintiff was not paid any overtime premium for such "on duty" hours, therefore Defendant's violations of VOWA were knowing.

**PRAYER FOR RELIEF FOR COUNT I**

**FLSA Claim**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Enter judgment declaring that the acts and practices complained of herein are violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*;

B.     Enter judgment awarding Plaintiff actual compensatory damages in the amount shown to be due for unpaid overtime compensation, with pre-judgment interest, against

11

Defendant;

C.    Enter judgment that Defendant's violations of the FLSA were willful;

D.    Enter judgment awarding Plaintiff an amount equal to his overtime damages as liquidated damages;

E.    Enter judgment for post-judgment interest at the applicable legal rate;

F.    Enter judgment awarding Plaintiff reasonable attorneys' fees and costs of this suit;

G.    Grant such other and further relief as this Court deems necessary and proper.

## PRAYER FOR RELIEF FOR COUNTS II-III

### Virginia State Law Wage Claims

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Award appropriate declaratory relief regarding Defendant's unlawful acts and practices, in violation of Va. Code §§ 9.1-700 *et seq*., and § 40.1-29.2 and injunctive relief to prevent such practices continuing in the future;

B.    Award appropriate back pay in amounts equivalent to Plaintiff's previously deprived wages, and a doubling of the same pursuant to Va. Code §§ 9.1-701 through 9.1-704 (VGPA);

C.    Award wages owed, an additional equal amount as liquidated damages, and triple damages for a "knowing" violation, plus prejudgment interest, under § 40.1-29.2 (VOWA);

D.    Award attorneys' fees and costs incurred on Plaintiff's behalf, pursuant to Va. Code § 9.1-704; and § 40.1-29.2; and

E.    Grant such other and further relief to which Plaintiff may be justly entitled.

12

**<u>Demand for Jury Trial</u>**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby request a TRIAL BY JURY for all claims and issues so triable.

Respectfully submitted,
**Jonathan McGill**
Plaintiff


By:___/s/ Craig Juraj Curwood_____
Craig Juraj Curwood (VSB No. 43975)
Zev H. Antell (VSB No. 74634)
Samantha R. Galina (VSB No. 96981)
Butler Curwood, PLC
140 Virginia Street, Suite 302
Richmond, VA 23219
Telephone: (804) 648-4848
Fax: (804) 237-0413
Email: craig@butlercurwood.com
         zev@butlercurwood.com
         samantha@butlercurwood.com

*Attorneys for Plaintiff*

13